UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RODNEY NEAL, | : | |
| Plaintiff, | : | Civ. No. 22-5574 (KM) (JBC) |
| v. | : | |
| | : | OPINION |
| OSCAR AVILES, et al., | : | |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.**

Plaintiff Rodney Neal, a pretrial detainee at Hudson County Correctional Facility ("HCCF"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 stemming from allegedly deficient COVID-19 protocols at HCCF. DE 1. Neal's complaint names the following defendants: Oscar Aviles, director of the Hudson County Department of Corrections ("HCDOC"), and "Nurse Wint," a nurse allegedly employed by "HDOC – medical/Well Path." DE 1 at 3. In a previous order (DE 4), I granted Neal leave to proceed *in forma pauperis*, and noted that the complaint would be screened in due course pursuant to 28 U.S.C. § 1915A. Having screened the complaint, I now dismiss it because it is plain from the face of the complaint that Neal did not exhaust administrative remedies prior to filing this lawsuit.

I.  COMPLAINT

   A.  Factual Allegations

The complaint contains the following allegations, which, for screening purposes, I accept as true.

Neal asserts that he is being "detained in a Covid infested billion dollar industry at [HCCF]." DE 1 at 8. The residents there "are packed in like a refugee camp or sardines," and

Neal believes "it[']s all about packing all these contract centers in Hudson County"; and "someone is being very greedy [and/]or trying th[ei]r best to kill off residents with overpopulation like modern[-]day slavery . . . ." *Id.* at 9, 10–11.

Neal is detained in the "Integrity Section Housing Unit" at HCCF, which is "usually up to[] 32 community residents/inmates." DE 1 at 8. Neal is "on the fourth floor south side," but "just left the fifth floor in which the side [he] resided on . . . had the maximum of 64 inmates." *Id.* at 9. Neal describes his experience there as follows: "We had to make amendments to[] keep social distancing but how in a packed environment such as this & Covid on the move, residents getting sick at alarming rates, counselors bringing in Covid at a time between November 21 and up until February 22 in which all recovery was set aside and no one cared enough to be around the max of 64 people in which it should have never met that capacity." *Id.* at 9–10. Neal asserts that with "the amount of residents taken off the tier it[']s only getting worse but us only getting Covid tests in which if the program did this before bringing up so many other and different counties from all over New Jersey because of closure and Covid 19 breakouts." *Id.* at 11–12. Neal states that "the tier" increased from 27 to 53 people because "Cumberland County was here" (I interpret this to mean that the population of the "tier" increased when inmates were transferred there from Cumberland County Correctional Facility). Neal states that "possibly a couple of them were sick now E-400 South is under quarantine." *Id.* at 13.

As Neal was writing his complaint, "there [was] coughing, sneezing, sad faces, long faces, correction officers not being tested regularly because where is it coming from[?] Were stable, no movement." *Id.* at 12. Neal has "14 months in but [is] in a state of fighting for [his] life at 51 years old due to [his] situations, high blood pressure, arthritis, diabetes, 4 toes amputated, cholesterol, vision now bad." *Id.* at 12–13. Neal alleges that Aviles "failed to provide a safe

environment which resulted in [Neal's] contraction of the COVID-19 virus" (*id.* at 4), and Nurse Wint "failed to properly diagnose/contain and treat the COVID-19 infection" (*id.* at 4).

Neal affirmatively states that he did not seek informal or formal relief through the jail's administrative grievance system because "[a]dminstration fails to recognize that they have done anything wrong." *Id.* at 5. Neal "would like the Court to help [him] procure $100,000 for ongoing pain and suffering" (*id.* at 7) and seeks release so he can "fight for his health [and] rights . . . from the natural air" (*id.* at 15).

### B.  Screening Standards

The Prison Litigation Reform Act ("PLRA") requires district courts to review civil complaints filed by prisoners. *See* 28 U.S.C. § 1915A(a). The court must dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). In addition, the PLRA precludes prisoners from contesting prison conditions in federal court until they have exhausted "all avenues of relief available to them within their prison's inmate grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must complete all available remedies, even if they are not "plain, speedy, and effective," do "not meet federal

3

standards," or could not result in the requested relief. *Id.* at 524; *see also Leinheiser v. Hoey*, No. 17-11642, 2020 WL 5362168, at *4 (D.N.J. Sept. 8, 2020) (same).

Failure to exhaust is an affirmative defense; thus, in general, the defendant has the burden of pleading and proving that a plaintiff has failed to exhaust. *Leinheiser*, 2020 WL 5362168, at *5. However, "failure to exhaust can be a basis for dismissal for failure to state a claim where it appears on the face of the complaint." *McCain v. Smith*, No. CV 18-1187, 2021 WL 5205870, at *3 (M.D. Pa. Nov. 8, 2021); *see also Monroe v. Nunn*, No. 21-2218, 2022 WL 885095, at *1 (3d Cir. Mar. 25, 2022) (district court did not err in *sua sponte* dismissal of § 1983 action because "[b]y Monroe's own admission, he did not exhaust his administrative remedies before filing his complaint"); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000) (affirming court's *sua sponte* dismissal "because Booth failed to exhaust his available administrative remedies (rather than those he believed would be effective) before filing his § 1983 action") (cleaned up)); *Jeffries v. Ortiz*, No. CV 18-1146, 2020 WL 948797, at *7 (D.N.J. Feb. 27, 2020) (Court dismissed *Bivens* action *sua sponte* where: "Upon review of the Complaint, Plaintiff facially admits that he has not exhausted his administrative remedies prior to filing this action. Plaintiff indicated, under penalty of perjury, that he had not 'previously . . . sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims.'").

Here, it is clear from the face of Neal's complaint that he has failed to exhaust. As described above, on the Court's standard form for civil rights complaints, in response to a question asking whether Neal sought "informal or formal relief from the appropriate administrative officials regarded the acts complained of," Neal checked the box for "no." DE 1 at 5. Asked to explain, he wrote: "Administration fails to recognize that they have done anything wrong." *Id.* But the law is clear that a mere statement that exhaustion would be futile does not

create an exception to the exhaustion requirement. And the Court is not permitted to consider unexhausted claims. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("it is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement [of § 1997(e)], whether on the ground of futility, inadequacy or any other basis") (citation and quotations omitted); *Giehl v. Lanigan*, No. 15-CV-07864, 2017 WL 5505003, at *2 (D.N.J. Nov. 15, 2017) ("the exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow"). Accordingly, Neal's complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1997e(a). *See Booth,* 206 F.3d at 300 (determining that dismissal without prejudice is appropriate when an inmate has failed to exhaust his available administrative remedies before filing an action under 42 U.S.C. § 1983).

## II.    CONCLUSION

For the reasons above, Neal's complaint is dismissed for failure to exhaust administrative remedies prior to filing suit. An appropriate order follows.

DATED:  November 16, 2022

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge